UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SARAH ANN BATTINO *et al.*,                           :
                                                      :       09 CV 4113  (JPO)(MHD)
                Plaintiffs,      :
                                                      :
      - against -                            :
                                                      :
CORNELIA FIFTH AVENUE, LLC, *et al.*,                 :
                                                      :
                Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CANIZALES'S MOTION FOR SUMMARY JUDGMENT**


**LEVY DAVIS & MAHER, LLP**
**39 Broadway, Suite 1620**
**New York, New York 10006**
**(212) 371-0033**


Of Counsel:    Jonathan A. Bernstein (JB 4053)

**Table of Contents**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.        The Substantial Continuity Standard Applicable to FLSA Cases. . . . . . . . . . . . . . . . . . . 3

        A.        The Substantial Continuity Standard Vindicates the Congressional
                  Purpose of Guaranteeing Payment of Minimum Wages. . . . . . . . . . . . . . . . . . . . . 4

        B.        The Substantial Continuity Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
                  1. Notice of the Potential Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
                  2. Ability of the Predecessor to Provide Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
                  3. Substantial Continuity of Business Operations. . . . . . . . . . . . . . . . . . . . . . . . . 9
                  5. Substantially the Same Work Force. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                  6. Substantially the Same Supervisory Personnel. . . . . . . . . . . . . . . . . . . . . . . . 10
                  7. The same jobs under substantially the same working conditions. . . . . . . . . . 10
                  8. The machinery, equipment and methods of production. . . . . . . . . . . . . . . . . 10
                  9. The successor produced the same product. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.       Joint and Several Liability; the Economic Realities Standard. . . . . . . . . . . . . . . . . . . . 10

III.     Mr. Canizales's Liability Derives from Spa Chakra's. . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Table of Authorities**

Federal Cases

*Abdel-Khalek v. Ernst & Young, L.L.P.*, 1999 U.S. Dist. LEXIS 2369
(S.D.N.Y. Apr. 7, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Ansoumana v. Gristede's Operating Corp.,* 255 F. Supp. 2d 184,
*aff'd on reconsideration,* 255 F. Supp. 2d 197. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008). . . . . . . . . 6

*Bates v. Pacific Maritime Ass'n*, 744 F.2d 705 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brock v. La Grange Equip. Co.*, 1987 U.S. Dist. LEXIS 14532, 28 WH Cas 780
(D. Neb. July 14, 1987. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Chao v. Concrete Mgmt. Resources, L.L.C.*, 2009 U.S. Dist. LEXIS 18619
(D. Kan. Mar. 5, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281 (E.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Criswell v. Delta Air Lines, Inc.*, 868 F.2d 1093 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . 4

*Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . 11

*EEOC v. G-K-G, Inc.*, 39 F.3d 740 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir. 1974). . . . . . . . . . . . . . 5

*EEOC v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505 (W.D.N.Y. 2007). . . . . . . . . . . . . . . . 4, 6

*EEOC v. Sage Realty Corp.*, 507 F. Supp. 599 (S.D.N.Y. 1981). . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27 (1987). . . . . . . . . . . . . . . . . . . . 7, 9

*Fennell v. TLB Plastics Corp.*, 1989 U.S. Dist. LEXIS 8738 (S.D.N.Y. July 28, 1989). . . . . . . . 7

*Golden State Bottling Co. v. NLRB,* 414 U.S. 168 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Herman v. RSR Security Svcs. Ltd.,* 172 F.3d 132 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 11

*Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249 (1974). . . . . . . . . . . . . . . . . 6

*John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276 (E.D.N.Y. 2007). . . . . . . . . . . . . . . . . 6

*Leib v. Georgia-Pacific Corp.*, 925 F.2d 240 (8th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Long v. AT&T Info. Sys., Inc.*, 733 F. Supp. 188 (S.D.N.Y. 1990). . . . . . . . . . . . . . . . . . . . . . . . 4

*Lopez v. Silverman*, 14 F. Supp. 2d 405 (S.D.N.Y. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.,* 475 U.S. 574 (1986). . . . . . . . . . . . . . 8

*Medina v. Unlimited Sys., LLC*, 760 F. Supp. 2d 263 (D. Conn. 2010). . . . . . . . . . . . . . . . . . 6, 7

*Molfese v. Fairfaxx Corp.*, 2006 U.S. Dist. LEXIS 32468 (D. Conn. May 12, 2006). . . . . . . . 4, 6

*Moon v. Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Musikiwamba v. ESSI, Inc.*, 760 F.2d 740 (7th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

*Samborski v. Linear Abatement Corp.,* 1999 U.S. Dist. LEXIS 14571 (S.D.N.Y. 1999). . . . . . 11

*Secretary of Labor v. Mullins*, 888 F.2d 1448 (D.C. Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Slaughter v. American Bldg. Maintenance Co.*, 64 F. Supp. 2d 319 (S.D.N.Y. 1999). . . . . . . . . 4

*Steinbach v. Hubbard*, 51 F.3d 843 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . 4, 8

*Trujillo v. Longhorn Mfg. Co., Inc.*, 694 F.2d 221 (10th Cir. 1982). . . . . . . . . . . . . . . . . . . . . 4, 7

*Trustees for Alaska Laborers- Construction Industry Health & Sec. Fund v. Ferrell*,
812 F.2d 512 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*,
920 F.2d 1323 (7th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Wong v. Hunda Glass Corp.*, 2010 U.S. Dist. LEXIS 62653 (S.D.N.Y. June 23, 2010). . . . . . . 7

Federal Statutes

29 U.S.C. § 151 (National Labor Relations Act). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5

29 U.S.C. § 185 (Labor Management Reporting Act). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

29 U.S.C. § 201 (Fair Labor Standards Act). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

29 U.S.C. § 206(d) (Equal Pay Act). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

29 U.S.C. § 621 (Age Discrimination in Employment Act). . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

29 U.S.C. § 1132 (ERISA). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

29 U.S.C. § 1145 (Multiemployer Pension Plan Amendments Act). . . . . . . . . . . . . . . . . . . . 4, 5

29 U.S.C. § 2601 (Family and Medical Leave Act). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

30 U.S.C. § 801 (Mine Safety and Health Act). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

38 U.S.C. § 2021 (Vietnam Era Veterans' Readjustment Assistance Act). . . . . . . . . . . . . . . 4, 5

42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964). . . . . . . . . . . . . . . . . . . . . . . . 4, 5

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CANIZALES'S MOTION FOR SUMMARY JUDGMENT

## Preliminary Statement

This action seeks unpaid minimum wages under the Fair Labor Standards Act. Defendant-movant Michael Canizales asserts that he was not the plaintiffs' "employer" at the relevant time. Plaintiffs contend on this motion that the Spa Chakra corporate defendants are the successors in interest of the Cornelia defendants (which failed to pay minimum wages in the first instance), that Mr. Canizales and Spa Chakra are jointly and severally liable and that he is therefore an "employer" within the meaning of the FLSA.

The FLSA contains no statutory definition of successor. The federal courts have developed an equity-based successorship doctrine (the "substantial continuity test") for use in NLRA and other federal labor and employment cases; courts in several circuits, including the Second, have applied these standards to the FLSA. Plaintiffs argue that this Court should likewise apply these standards.

Defendant admits, in his summary judgment affidavit, every fact necessary to establish that Spa Chakra is a successor in interest under the "substantial continuity" doctrine. Second Circuit courts routinely hold corporate defendants and their managing principals jointly and severally liable under the FLSA.

Plaintiffs concede that they have not shown genuine issues of material fact under the common-law successorship standards applicable to their New York Labor Law and contract claims. They further concede that their ERISA claims are not viable against Mr. Canizales. Accordingly, they consent to dismissal of the second through seventh claims as against Defendant Canizales.

**Statement of Facts**

Cornelia Fifth Avenue, LLC owned and operated a day resort until February 6, 2009. Affidavit of Michael Canizales, sworn to September 23, 2011 (the "Canizales Aff.") ¶ 3. On that date, it sold the day resort to Spa Chakra Fifth Avenue, LLC (SCFAL). Ex. A. That entity existed for the single purpose of owning and operating the resort. Canizales Aff. ¶ 10. Michael Canizales was a part owner and member of that company as well as an officer, director and shareholder of Spa Chakra, Inc., a "related entity." *Id.* ¶ 2. Following the sale, Mr. Canizales was General Manager, "in charge of operations" at the resort, as the employees were aware. *Id*. ¶¶ 20, 27.

Plaintiffs were employees of Cornelia and/or its affiliates and/or principals. *Id.* ¶ 21. Cornelia failed to pay the employees' wages for the period January 4, 2009 until February 6, 2009 the date of the closing of the sale.

On or about February 4, 2009, *i.e.*, two days prior to SCFAL taking over the spa's operations, Canizales gave Cornelia employees a PowerPoint presentation about SCFAL. During that presentation, Canizales stated that SCFAL would take over responsibility for payroll beginning on February 6, 2009. Declaration of Amanda Wells dated October 20, 2009 (the "Wells Decl.") ¶¶ 3-4. Following the presentation, Ms. Wells (the Spa's Director of Marketing and Public Relations) overheard Richard Aidekman, the principal of Cornelia Fifth, and Canizales arguing in the office adjacent to hers. Canizales told Aidekman that Cornelia Fifth would have to be responsible to pay all of the employees, including Ms. Wells, all outstanding unpaid wages. *Id.* ¶ 5. The argument lasted for several hours. *Id.*

Canizales admits learning "on or about" February 6, 2009 that Cornelia had not paid its employees' wages for January and February 2009. Canizales Aff. ¶ 23. According to Mr.

2

Canizales, Aidekman undertook to "promptly make arrangements" to pay a part of those wages by funding an operating account that would at some point be conveyed to Spa Chakra. *Id.* However, the accounts ultimately did not contain sufficient funds from which to make the partial payments. *Id.* Neither Cornelia nor Spa Chakra ever paid any part of those wages. *Id.* ¶¶ 23-24.

The creditors of SCFAL filed an involuntary Chapter 7 bankruptcy petition against that entity. The proceeding was converted to a Chapter 11 petition. *Id.* ¶ 16. Spa Chakra, Inc. is also in bankruptcy, as are the principals of Cornelia. *See* parties' joint status report to Court dated October 26, 2011 (not docketed as of October 31).

From the plaintiffs' perspective, the result of those bankruptcies is that if Mr. Canizales is not compelled to pay the plaintiffs' minimum wages, then those wages will not be paid.

**Argument**

A growing number of federal courts, faced with the competing claims of ordinary workers deprived of minimum wages and successor employers whose predecessors failed to pay those wages, have placed the burden on the successor (where, as here, the predecessor is unable to provide relief). Those courts acknowledge that the policy of ensuring minimum standards of living for wage-earners has, in part, displaced the common law of corporate successorship. The plaintiffs here urge recognition of the economic realities and adoption of the equity-based substantial continuity standard.

I.   **The Substantial Continuity Standard Applicable to FLSA Cases**

There is a split of authority within the Second Circuit. Some courts, in the Southern

District of New York and the District of Connecticut, have applied the federal "substantial continuity" test in FLSA cases. Some courts, in the Eastern District of New York, have applied the common-law successorship standard. In this case, defendant argues for application of the common-law successorship standard but does not acknowledge the split or that Southern District courts have endorsed substantial continuity as recently as 2010. Def. MOL at 9 ("[i]t appears that New York common law should govern the analysis ...")

### A.  The Applicable Substantial Continuity Standard Vindicates the Congressional Purpose of Guaranteeing Payment of Minimum Wages

The FLSA does not define "successor." However, beginning with cases under the National Labor Relations Act ("NLRA"), federal courts have developed a common-law successorship doctrine that now extends to virtually all federal employment statutes (including the Equal Pay Act, which is a part of the FLSA, 29 U.S.C. § 206(d)).[1]

---

[1] *E.g., Golden State Bottling Co. v. NLRB,* 414 U.S. 168 (1973) (NLRA); *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323 (7th Cir. 1990) (Multiemployer Pension Plan Amendments Act); *Secretary of Labor v. Mullins*, 888 F.2d 1448 (D.C. Cir. 1989) (Mine Safety and Health Act); *Criswell v. Delta Air Lines, Inc.*, 868 F.2d 1093 (9th Cir. 1989) (Age Discrimination in Employment Act); *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 748 (7th Cir. 1994) (ADEA); *Trustees for Alaska Laborers- Construction Industry Health & Sec. Fund v. Ferrell*, 812 F.2d 512 (9th Cir. 1987) (ERISA); *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740 (7th Cir. 1985) (42 U.S.C. § 1981); *Bates v. Pacific Maritime Ass'n*, 744 F.2d 705 (9th Cir. 1984) (Title VII); *Trujillo v. Longhorn Mfg. Co., Inc.*, 694 F.2d 221, 225 (10th Cir. 1982) (Title VII); *EEOC v. Sage Realty Corp.*, 507 F. Supp. 599, 612 n.20 (S.D.N.Y. 1981) (Title VII); *Molfese v. Fairfaxx Corp.*, 2006 U.S. Dist. LEXIS 32468 (D. Conn. May 12, 2006); *EEOC v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 510-11 (W.D.N.Y. 2007) ; *Abdel-Khalek v. Ernst & Young, L.L.P.*, 1999 U.S. Dist. LEXIS 2369 (S.D.N.Y. Apr. 7, 1999); *Long v. AT&T Info. Sys., Inc.*, 733 F. Supp. 188, 208 (S.D.N.Y. 1990) (Title VII); *Leib v. Georgia-Pacific Corp.*, 925 F.2d 240, 244-45 (8th Cir. 1991) (Vietnam Era Veterans' Readjustment Assistance Act); *Slaughter v. American Bldg. Maintenance Co.*, 64 F. Supp. 2d 319, 328 (S.D.N.Y. 1999) (Family and Medical Leave Act); *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 781-83 (9th Cir. 2010) (FMLA);

Successor liability was originally adopted under the NLRA to avoid labor unrest and provide some protection for employees against the effects of a sudden change in the employment relationship. *Golden State* 414 U.S. at 182-85 (1973); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 549 (1964) ("employees are often helpless to protect their statutory rights when their employer sells the business or its assets"). Similarly, the FLSA was enacted to protect workers' standards of living through the regulation of working conditions. 29 U.S.C. § 202. That fundamental purpose is as deserving of protection as are the labor peace, anti-discrimination, and worker security policies underlying the NLRA, Title VII, 42 U.S.C. § 1981, ERISA, MPPAA, MSHA, VEVRAA, ADEA, EPA, and FMLA (n.1 *supra*). *Steinbach v. Hubbard*, 51 F.3d 843, 845-846 (9th Cir. 1995). Courts have recognized that extending liability to successors – even innocent successors – will sometimes be necessary in order to vindicate important statutory policies favoring employee protection. *Upholsterers'*, 920 F.2d at 1326-27; *Musikiwamba,* 760 F.2d at 746; *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1091 (6th Cir. 1974). Where employee protections are concerned, "judicial importation of the concept of successor liability is essential to avoid undercutting Congressional purpose by parsimony in provision of effective remedies." *Steinbach,* 51 F.3d at 845-846 (*quoting Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1237 (7th Cir. 1986)). As the Seventh Circuit observed in a case extending substantial continuity analysis to Section 1981, Congress passed both the NLRA and the antidiscrimination statutes in order to "eradicate practices that arbitrarily interfered with a person's ability to earn his livelihood" where the employee was "helpless to protect his rights against an employer's

---

*Carlton v. Interfaith Medical Center*, 612 F. Supp. 118, 121 (E.D.N.Y. 1985) (Equal Pay Act).

5

change in the business." *Musikiwamba*, 760 F.2d at 746.[2]

The Second Circuit has not considered whether the substantial continuity standard also applies in the FLSA context. *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 289 n.10 (E.D.N.Y. 2007); *Medina v. Unlimited Sys., LLC*, 760 F. Supp. 2d 263, 268-269 (D. Conn. 2010) (collecting cases). However, the Second Circuit has frequently observed that the FLSA has a "remedial purpose," and that "Congress intended [the statute] to have the widest possible impact in the national economy." *E.g., Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (citation and quotation omitted). Therefore, in the context of determining whether an employee-employer relationship exists for the purposes of the statute, the Second Circuit has taken a "flexible" approach, *id*. at 141-42, and has noted that the Supreme Court "has instructed that the determination of whether an employer-employee relationship exists for the purposes of the FLSA should be grounded in "economic reality rather than technical concepts." *Id*. (*quoting Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33, (1961)). Courts analyzing successorship questions generally seek to balance the policies underlying the statute at issue and the interests of the affected parties. *Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 262-63 n.9, 256 (1974) (LMRA) ("in light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it

---

[2] Defendant asserts without authority (and contrary to the authorities cited in fn. 1 *supra*) that the substantial continuity test should not apply here "because the concern with unfair labor practices going unremedied does not apply outside the union context." Def. MOL at 16. Defendant also asserts, mistakenly, that Second Circuit courts uniformly apply Judge Martin's *Shevack* analysis in Title VII cases. *Id.* at 15-16. In fact, Second Circuit courts applied the substantial continuity test in *Sage Realty, Molfese, Nichols Gas & Oil,* and *Abdel-Khalek*, fn. 1 *supra*, Title VII cases both predating and postdating *Shevack*.

arises is especially appropriate").

Accordingly, courts in several circuits have adopted "substantial continuity" analysis in FLSA successorship cases. *Steinbach*, 51 F.3d at 846-67 (9th Cir.); *Chao v. Concrete Mgmt. Resources, L.L.C.*, 2009 U.S. Dist. LEXIS 18619 (D. Kan. Mar. 5, 2009); *Brock v. La Grange Equip. Co.*, 1987 U.S. Dist. LEXIS 14532, 28 WH Cas 780 (D. Neb. July 14, 1987). A Southern District court recently applied the substantial continuity test in an FLSA case. *Wong v. Hunda Glass Corp.*, 2010 U.S. Dist. LEXIS 62653, at *1 (S.D.N.Y. June 23, 2010) ("based on the fact that there was substantial continuity between the businesses, and there was the same workforce, same job titles, same supervisors, same machinery, and same products") (Ellis, M.J.). *See also Medina*, 760 F. Supp. 2d at 268-269 (discussing split of authority; finding successor liability on substantial continuity and common-law theories).

### B.     The Substantial Continuity Factors

The determination of "substantial continuity" involves considerations of: (1) whether the successor company had notice of the potential liability; (2) the ability of the predecessor to provide relief; (3) whether there was a substantial continuity of business operations, (4) whether the employer used the same plant;(5) whether the successor used the same or substantially the same work force;(6) whether the successor used the same or substantially the same supervisory personnel; (7) whether the same jobs existed under substantially the same working conditions; (8) whether the successor used the same machinery, equipment and methods of production and (9) whether the successor produced the same product. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987); *Trujillo,* 694 F.2d at 225; *Fennell v. TLB Plastics Corp.*, 1989

U.S. Dist. LEXIS 8738 (S.D.N.Y. July 28, 1989) (*quoting MacMillan Bloedel Containers*, 503 F.2d at 1094)).[3]

### 1. Notice of the Potential Liability

Mr. Canizales learned of the unpaid wages on February 4, 2009, two days prior to the closing of the transaction with Spa Chakra. Wells Decl. ¶¶ 4-5. Mr. Canizales admits learning of the unpaid wages "at or about" the time of the closing. Canizales Aff. ¶ 23. Plaintiffs are entitled, on summary judgment, to an inference that "at or about" means "before." *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). In any event, even if Mr. Canizales's affidavit squarely contradicted Ms. Wells's, the contradiction would create a triable issue of fact precluding summary judgment.

There is no requirement that a charge or complaint be filed at the time of the closing, let alone that the successor have actual notice of such a proceeding. *La Grange Equipment Co.*, *supra*. 28 WH Cases 780. All that is required is that the successor be aware of facts that could give rise to a claim. *Id.* at 782.

### 2. Ability of the Predecessor to Provide Relief

The predecessor, its affiliates and its principals are in bankruptcy and cannot provide relief with the exception of Cornelia Essentials LLC, which defaulted in this action and appears to have no assets . Parties' joint status report to Court dated October 26, 2011.

---

[3] The courts that have applied a substantial continuity standard to determine successor liability do not define the standard in exactly the same way. However, the various articulations of the substantial continuity test emphasize that "[t]he inquiry is not merely whether the new employer is a successor in the strict corporate-law sense of the term." *Sullivan*, 623 F.3d at 781 (citations and quotation omitted).

### 3. Substantial Continuity of Business Operations

The successor and the predecessor operated the same day resort. Canizales Aff. ¶ 3.Spa Chakra began "transitioning" from Cornelia Day resort immediately following the closing of sale. *Id.* ¶ 22. The location came to be known as the Spa Chakra Fifth Avenue Spa. *Id.* Spa Chakra employees told customers of the change when calls to make appointments were made. *Id.* That is, Spa Chakra represented to Cornelia customers that it was the same business.

Spa Chakra acquired Cornelia's inventory, equipment, contracts related to the business, accounts receivable, business authorizations, books and records, claims, prepaid expenses, security and other deposits, cash and goodwill. Ex. A ¶ 2.1.

Most critically, under substantial continuity analysis, the operative inquiry is whether, from the *employee's* perspective, the employer was a successor in interest. *Fall River*, 482 U.S. at 43. In successor-employer situations, "those employees who have been retained will understandably view their job situations as essentially unaltered" since "their jobs did not change." *Id.* That is, it is the continuity of the job, rather than the change of name in the "issuer" space on the payroll check or the fact that successor had the employees in for a PowerPoint presentation, that is the touchstone of "substantial continuity." Defendant thus cites no fact in support of his contention that Cornelia employees cannot have viewed their jobs as essentially unaltered after the closing of sale. Def. MOL at 16.

### 4. The Same Plant

Spa Chakra operated a day resort at the same location Cornelia had. Canizales Aff. ¶ 3.

### 5. Substantially the Same Work Force

Spa Chakra hired "some, but not all" of Cornelia's employees. *Id.* ¶ 21. All of the

plaintiffs worked for both Cornelia and Spa Chakra. *Id.*

### 6. Substantially the Same Supervisory Personnel

There is no evidence currently before the court with respect to this factor.

### 7. The same jobs under substantially the same working conditions

Plaintiffs submit that inferences arising from everyday experience create a triable issue of fact with respect to this factor. It is unlikely that, *e.g.*, Cornelia's hair colorists became massage therapists or custodians at Spa Chakra. In addition, plaintiff Amanda Wells was Director of Marketing and Public Relations under both Cornelia and Spa Chakra. Wells Decl. ¶ 2.

### 8. The machinery, equipment and methods of production

*See* Point I(B)(7), immediately above.

### 9. The successor produced the same product

Notwithstanding Spa Chakra's discontinuation of the sale of Cornelia-branded beauty products (Canizales Aff. ¶ 22), the primary products of a day spa are services (massages, beauty treatments, saunas), not goods. Spa Chakra continued to offer those services. *Id.*

## II.   Joint and Several Liability; the Economic Realities Standard

Mr. Canizales admits that he was a part owner and member of Spa Chakra Fifth Avenue, LLC as well as an officer, director and shareholder of Spa Chakra, Inc., a "related entity." Canizales Aff. ¶ 2. Following the sale, Mr. Canizales was "in charge of operations" at the resort, as the employees were aware. *Id*. ¶ 27. As discussed below, he and the Spa Chakra defendants are jointly and severally liable.

The FLSA defines "employ" as "suffer or permit to work." 29 U.S.C. § 203(g). An

employer is, *inter alia*, "any person acting directly or indirectly in the interest of an employer in relation to an employee...." *Id.* It is settled that the FLSA definition of "employer" includes individual principals of corporate employers. *Herman v. RSR Security Svcs. Ltd.,* 172 F.3d 132 (2d Cir. 1999) ("economic realities" determination that owner/chairman of corporate defendant, who owned 50% of the shares of the corporate defendant and had the power to hire and fire, was individually liable for overtime violations with respect to security guards) (*citing Falk v. Brennan*, 414 U.S. 190, 195 (1973)).

Accordingly, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (Lynch, J.) (*citing Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983;) *RSR, supra*, 172 F.3d at 139-41; *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965-66 (6th Cir. 1991); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971-72 & n.7 (5th Cir. 1984).

District courts within the Second Circuit generally look both to the individual's equity in the corporate defendant and control over the plaintiffs' work. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005) (President of corporate defendant had control over day-to-day activities, no other employee had such powers; individual liability); *Samborski v. Linear Abatement Corp.,* 1999 U.S. Dist. LEXIS 14571 (S.D.N.Y. 1999) (president and sole owner of company had "operational control" and certified payrolls; individual liability); *Moon v. Kwon*, 248 F. Supp. 2d 20 (S.D.N.Y. 2002) (hotel president played intimate role in day-to-day operations; individual liability); *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281 (E.D.N.Y. 2002)

(president/sole shareholder had power to hire, fire, supervise, set schedules, determine pay rate; individual liability); *Ansoumana v. Gristede's Operating Corp.,* 255 F. Supp. 2d 184, *aff'd on reconsideration,* 255 F. Supp. 2d 197 (S.D.N.Y. 2003) (Hellerstein, J.) (individual owners of delivery contracting business exercised operational control; individual liability); *Lopez v. Silverman*, 14 F. Supp. 2d 405, 412-13 (S.D.N.Y. 1998) (Sotomayor, J.) (president/sole shareholder had "dominant" role over daily operations; individual liability).

### III.     Mr. Canizales's Liability Derives from Spa Chakra's

As noted in Point II, FLSA liability may attach to an equity owner with operational control over a corporate defendant without regard to traditional "veil-piercing" analysis. (Defendant's contention that plaintiffs cannot pierce Spa Chakra's corporate veil is correct – but inapposite.)

Plaintiffs contend on this motion that the Spa Chakra defendants were the successors of the Cornelia defendants. It is, however, Michael Canizales who seeks summary judgment.

To be clear, plaintiffs argue on this motion that: (1) the Spa Chakra defendants are the successors of the Cornelia defendants and (2) Canizales is jointly and severally liable with the Spa Chakra defendants. Since the Spa Chakra corporate defendants, like the Cornelia defendants, are unable to provide relief, plaintiffs seek their remedy from Mr. Canizales.

Plaintiffs dispute any notion that holding Mr. Canizales liable would be unfair or inequitable, especially in light of evidence that he was aware, at all relevant times, that Cornelia had not paid minimum wages. Even if he were entirely innocent, equity would favor the plaintiffs, wage earners whose labor was not compensated, against an investor whose risk did not

pay off. It should also be noted that the FLSA claims are relatively small compared to the contract, Labor Law and ERISA claims in this action.

## **Conclusion**

For the foregoing reasons, plaintiffs respectfully request that this Court issue an Order dismissing so much of defendant Michael Canizales's motion for summary judgment as seeks dismissal of plaintiffs' First Claim for Relief and granting such other and further relief as to this Court may seem just, fair and equitable.

Dated: New York, New York
October 31, 2011

Respectfully submitted,

_____/s/_____

Jonathan A. Bernstein (JB 4053)
Levy Davis & Maher, LLP
39 Broadway, Suite 1620
New York, New York 10006
Tel:  (212) 371-0033

Salvatore G. Gangemi  (SG 5604)
GANGEMI LAW FIRM, P.C.
82 Wall Street, Suite 300
New York, New York 10005
(212) 425-0630

Attorneys for Plaintiffs

13